UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARGARETTE CHARLES,
    Plaintiff,

v.

No. 3:18-cv-0729 (SRU)

EDMOND O'GARRO, NORWALK
HOUSING COURT CLERK, in his
individual capacity,
    Defendant.

## ORDER OF DISMISSAL

Margarette Charles ("Charles") has filed this action *pro se* against Edmond O'Garro ("O'Garro"), a clerk of the Connecticut Superior Court's Housing Session at Norwalk. (Doc. # 1 [hereinafter, the "Complaint"]).[1] Charles alleges wrongdoing by O'Garro in his handling of attempts by her ex-husband and her ex-husband's friend to file documents on Charles's behalf in a foreclosure action then pending against Charles in the Norwalk Housing Court (the "Foreclosure Action").[2] Following review, I have determined that Charles's Complaint does not

---

[1] Although O'Garro is the only defendant included in the caption of Charles's Complaint and in the description of the parties to the action, and the Complaint's sole count is pled against O'Garro, the Complaint does, only once, also refer to "Defendant(s) U.S. BANK". The Complaint also, separately, refers once to an "emergency injunction" being sought "against . . . U.S. Bank in this matter". It is unclear whether the reference to U.S. Bank as an additional defendant is inadvertent, and, even in light of the generous standards applied to pro se litigants, I am unable to interpret the Complaint as being brought against parties other than O'Garro.

[2] Although the Complaint describes the Foreclosure Action as proceeding in the Norwalk Housing Court, the case number of the Foreclosure Action, which Charles has included in the Complaint, suggests that the Foreclosure Action was proceeding in the Bridgeport Housing Session. Inspection of the state court docket sheet for the Foreclosure Action, which Charles has likewise attached to the Complaint, confirms that the Foreclosure Action was proceeding in the Bridgeport Housing Session. Although I do not rely on the point in my below decision, that confusion may have been one reason that O'Garro was unable to accept any filings related to the Foreclosure Action in the Norwalk Housing Session.

1

currently present any non-frivolous claims. O'Garro in his individual capacity is protected by judicial immunity from claims for damages or injunctive relief, and, because Charles's appearance has subsequently been entered in the Foreclosure Action, even any claim for declaratory relief now appears to be moot. Moreover, at least some aspects of Charles's Complaint appear to be an attempt to interfere with the judgment obtained in the Foreclosure Action prior to the filing of this lawsuit, which is barred by the *Rooker-Feldman* doctrine. Finally, the Complaint itself is too vague in its current form for me to discern a plausible entitlement to relief. Accordingly, in the interests of judicial efficiency, I dismiss Charles's Complaint. Although I am skeptical that she can state a justiciable claim against O'Garro, because of the solicitousness due *pro se* litigants and because my dismissal is *sua sponte*, I will permit her thirty days to file an amended complaint. *See J.S. v. T'Kach*, 714 F.3d 99, 103 (2d Cir. 2013).

## I. Background

Charles alleges that her ex-husband, Lexene Charles, and his friend, Heather Lindsay ("Lindsay") went "as proxy" for her to the Norwalk Housing Court on April 1, 2018, to file a notice of her appearance in the Foreclosure Action and a petition for a writ of audita querela. Charles was apparently incapacitated by illness, and thus could not travel to the Court to file her appearance herself. Charles claims that O'Garro time-stamped the notice of appearance, but "explicitly and vehemently told [her proxies] that he was not going to file the . . . [n]otice of [a]ppearance", and that despite her proxies "implor[ing] and beseech[ing]" O'Garro, O'Garro "heatedly insisted that he was not going to do so".

Charles alleges that, on or about April 24, 2018, she realized that "not only was her [n]otice of [a]ppearance not filed . . . , but neither was her [p]etition for [a] [w]rit of [a]udita

[q]uerela." The next day, Charles's proxies again attempted to file her notice of appearance and petition, this time presenting the documents to a court clerk other than O'Garro. Although the second court clerk also time-stamped the notice of appearance and returned a copy to her proxies, the documents were again not filed on the Foreclosure Action's docket.

On April 26, 2018, the Housing Session of the Connecticut Superior Court granted U.S. Bank's motion for default for failure to appear against Charles and the other defendants in the Foreclosure Action.[3] The judgment granted against Charles in the Foreclosure Action permits U.S. Bank to take immediate possession of the pertinent premises five days after the date of the judgment, but I note that Charles appears to have followed the instructions in the notice docketed in the Foreclosure Action on the same day as the judgment, and has filed for a stay of execution of the judgment, which can delay her eviction by up to six months.[4]

Charles filed suit against O'Garro in this court on April 30, 2018, alleging violation of her right to due process under the United States Constitution (and potentially violations of other rights secured to her in the Bill of Rights), her right of access to the courts under the Connecticut Constitution, and Connecticut anti-discrimination law. The Complaint at one point states that O'Garro's misconduct is "actionable as a claim for which damages may be granted", but is most focused on obtaining an injunction "against the ruling of the Norwalk Housing Court that was unfairly procured by the [p]laintiff in that case by the indifference and deliberate subterfuge of

---

[3] As previously noted, although the Complaint states that the "Norwalk Housing Court granted" U.S. Bank's motion, the docket sheet, and the Housing Session's order appearing on the docket both indicate that the motion for default was decided by the Honorable Eddie Rodriguez in the Housing Session at Bridgeport.

[4] Charles's application for a stay of execution records the address of the Bridgeport Housing Court in the field on the form application marked "Clerk's office address" and the time-stamp on the document states "Housing Session at Bridgeport".

the Clerk of the Court, Defendant Edmond O'Garro". The Complaint also seeks a declaratory judgment that Charles "was deprived of her intrinsic constitutional rights". On April 30, 2018, Charles also moved for a temporary restraining order and emergency injunction preventing either O'Garro or U.S. Bank from interfering with her possession of the pertinent premises.[5] Neither O'Garro nor U.S. Bank has been served in this action.

**II.    Discussion**

Because Charles is proceeding *pro se*, I must construe her Complaint "liberally, reading it with special solicitude and interpreting it to raise the strongest claims that it suggests". *T'Kach*, 714 F.3d at 103. The indulgence to which the Complaint is entitled, however, does not excuse it from an obligation to state a valid ground for relief. *Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir. 1993). For the reasons stated below, it is unmistakably clear that Charles's claims are lacking in merit. Accordingly, I *sua sponte* dismiss her Complaint.

Because Charles and O'Garro are both residents of Connecticut, my jurisdiction over any state law claims in the Complaint relies on 28 U.S.C. § 1367, and thus depends on the survival of the Complaint's federal claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Most generously, the Complaint can be construed as pleading due process and other non-specific federal constitutional claims against O'Garro. The appropriate vehicle for allegations of constitutional violations is a claim under 42 U.S.C. § 1983, and because Charles is

---

[5] Because U.S. Bank is not a party to the present action, and is not "in active concert or participation" with a party to this action, an injunction cannot be entered against it pursuant to Federal Rule of Civil Procedure 65, even if I were not dismissing Charles's Complaint. *Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 303 (2d Cir. 1999).

proceeding *pro se*, I will construe her claims against O'Garro as having been properly brought under that statute. *See Morales v. New York*, 22 F. Supp. 3d 256, 272 (S.D.N.Y. 2014).

As a preliminary matter, O'Garro, as a clerk of the court, is a judicial officer and is thus entitled to immunity for actions taken in performance of a judicial function. *Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir. 1997). Charles accuses O'Garro of failing to file documents provided to him on Charles's behalf. "A court's inherent power to control its docket is part of its function of resolving disputes between parties", and actions taken by court staff in furtherance of docket control are part of that judicial function. *Id.* at 66-67 (holding that claim that "the court clerks violated [the plaintiff's] due process rights by failing to properly manage the court calendar" was barred by judicial immunity"); *see also Peker v. Steglich*, 324 F. App'x 38, 40 (2d Cir. 2009) (holding that clerk's act of filing exhibits was "basic and integral to the judicial function"); *Argentieri v. Clerk of Court for Judge Kmiotek*, 420 F. Supp. 2d 162, 164-65 (W.D.N.Y. 2006) (holding that "plaintiff claims that defendants violated his rights by refusing to acknowledge his motions or to schedule his court proceedings, . . . [we]re barred by absolute immunity"); *Ceparano v. Southampton Justice Court*, 2010 WL 11527157, at *8 (E.D.N.Y. Mar. 22, 2010), *report and recommendation adopted*, 2010 WL 11527158 (E.D.N.Y. May 12, 2010), *aff'd*, 404 F. App'x 537 (2d Cir. 2011) (holding that clerk's act of entering an erroneously-issued warrant into the system was shielded by judicial immunity). O'Garro's actions, as described in the complaint, are thus covered by judicial immunity.

My holding that the complained-of conduct is protected by judicial immunity might end the inquiry. *See, e.g.*, *Azubuko v. Judges of U.S. Court of Appeals – for the First Circuit*, 2008 WL 1990829, at *1 (E.D.N.Y. May 2, 2008) ("This court, construing plaintiff's complaints liberally, dismisses them as frivolous. Plaintiff's claims are barred by the doctrine of absolute

5

judicial immunity. Plaintiff seeks damages and additional relief from judges, courts, a court clerk, and an appeals attorney. Judges and certain judicial employees are immune from such suits."). Section 1983 did not abolish the common-law judicial immunity for actions proceeding under the statute. *Pierson v. Ray*, 386 U.S. 547, 554-55 (1967). Charles is, however, seeking a declaratory judgment, among other remedies, and there is some ambiguity about whether the judicial immunity applicable to section 1983 suits covers declaratory relief, *compare Koltun v. Berry*, 2013 WL 3816611, at *2 (S.D.N.Y. July 19, 2013) ("Because judicial immunity is absolute, it provides immunity from suit, not just from damages.") (citing *Mireles v. Waco,* 502 U.S. 9, 11 (1991)), *with Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (holding that absolute immunity bars not only section 1983 claims for damages, but also claims for injunctive relief against judicial officers where declaratory relief is available).

Even if O'Garro is not shielded by judicial immunity from a claim for declaratory judgment, Charles's complaint must fail. First, a declaration regarding Charles's constitutional right to have Lexene Charles and Lindsay file her notice of appearance in the Foreclosure Action is now moot, because Charles has successfully filed a notice of appearance in the Foreclosure Action.[6] "Declaratory judgment is inappropriate when it is sought to adjudicate past acts . . . . [A] change in the relief requested [from an injunction to declaratory judgment] does not prevent mootness." *Scheiner v. ACT Inc.*, 2013 WL 685445, at *3 (E.D.N.Y. Feb. 24, 2013). I do not have the jurisdiction to render a declaratory judgment when the underlying question is

---

[6] I may take judicial notice of the documents filed in the state court proceeding "to establish the fact of such . . . filings". *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992).

moot. *Pancake v. McCarthy*, 806 F. Supp. 378, 379 (E.D.N.Y. 1992) (citing *Golden v. Zwickler,* 394 U.S. 103 (1969)).

Second, the mootness of any declaration that Charles has a right to have her appearance entered (or any injunction requiring Charles's appearance to be entered), combined with O'Garro's immunity from any damage claims, highlights that Charles actually appears to be seeking a declaration of "her [r]ights under the law" in order to "ascertain . . . whether or not the U.S. BANK has a right to proceed with . . . [the] remedies" granted to it in the state Foreclosure Action. Inasmuch as Charles is thus seeking to interfere with the unfavorable state court judgment, her attempt is barred by the *Rooker-Feldman* doctrine. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Charles's additional request for "an injunction . . . against the ruling of the Norwalk Housing Court" is even more fundamentally barred by *Rooker-Feldman*.

Third, Charles has not actually pleaded any facts from which I could fairly construct a constitutional claim. Charles appears to have sent her proxies to a clerk of the Norwalk Housing Session in order to attempt to file her notice of appearance in a proceeding in the Bridgeport Housing Session. She has alleged that O'Garro's failure to file her notice of appearance was "intentional", that his rejection of her filing attempt was "explicit[] and vehement", and that, despite the "implor[ing] and beseech[ing]" of her proxies, O'Garro "heatedly insisted" that he would not file her appearance. The fact that O'Garro engaged in a spirited discussion with Charles's proxies is not by itself constitutionally infirm, however, and no additional information has been provided. I am therefore unable to infer that O'Garro acted improperly in refusing to file Charles's appearance. State courts possess the power to establish rules for their orderly administration, including regulation of the filing of documents on court dockets. There is no

indication that O'Garro's intentional refusal to file Charles's documents did not appropriately adhere to such regulations. Charles does not allege, for example, that her proxies' attempts to file her appearance were in compliance with Connecticut regulations, and thus properly submitted to O'Garro for filing. There is no suggestion that O'Garro, the clerk of the Norwalk Housing Court, was the appropriate state official to receive Charles's documents and file them on the Bridgeport Housing Session docket. Although the Complaint recites a Connecticut anti-discrimination statute, there are no allegations regarding any discriminatory purpose or effect related to O'Garro's behavior, or even that O'Garro acted with any type of generalized malice. In other words, Charles has not pleaded facts that could plausibly show that she had a legitimate entitlement to have O'Garro file her notice of appearance on the dates in question.

### III. Conclusion

O'Garro is protected by judicial immunity from claims for damages or injunctive relief, and Charles's requested declaratory or injunctive relief is either moot (to the extent she is seeking to have her appearance entered or seeking a declaration of her right to have her appearance entered) or barred by the *Rooker-Feldman* doctrine (to the extent she is seeking an injunction against, or a declaration regarding, the underlying state court judgment). The Complaint is also too sparsely pleaded to state a plausible claim of entitlement to relief. I hereby DISMISS the Complaint in its entirety. Because this decision is a *sua sponte* dismissal of a *pro*

*se* complaint, I will grant Charles thirty days to file an amended complaint. If no amended complaint is received by July 11, 2018, the clerk is directed to close the file.

So ordered.

Dated at Bridgeport, Connecticut, this 11th day of June 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge